FILED
2017 Jul-05  AM 09:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**RODERICK TURNER,**

    **PLAINTIFF,**

**V.**                                    **CIVIL ACTION NO.**

**PHYSICAL SECURITY, LLC,**

    **DEFENDANT.**                     **JURY TRIAL DEMANDED**

## COMPLAINT

### I.    JURISDICTION

1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 2000e *et seq.* This suit is authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, *et seq.* (Title VII) and 42 U.S.C. § 1981. The jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by Title VII providing for injunctive and other relief against race discrimination.

2.    Plaintiff timely filed his charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

1

## II.      PARTIES

3.      Plaintiff, RODERICK TURNER, (hereinafter "Plaintiff") is a citizen of the United States, and a resident of Birmingham, Jefferson County, Alabama. Plaintiff was formerly employed by Defendant.

4.      Defendant, PHYSICAL SECURITY, LLC, (hereinafter "Defendant") is registered and doing business in the State of Alabama and is an entity subject to suit under Title VII.  Defendant employs at least fifteen (15) persons.

## III.      STATEMENT OF THE FACTS

5.      Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 4 above.

6.      During April 2015, the Darrell Walker Temp Agency assigned Plaintiff to work for Defendant.

7.      Defendant assigned Plaintiff to the assembly line and then later moved Plaintiff to the shipping & receiving department.

8.      Defendant hired Plaintiff in August of 2015.

9.      Defendant employed Plaintiff at its location found at 600 Belview Street in Bessemer, Alabama.

10.      At all times while employed with Defendant, Plaintiff performed her job duties in a competent or better manner.

11.      Defendant terminated Plaintiff on or about August 2, 2016.

2

12.     At the time that Defendant terminated his employment, Plaintiff was "lead" over the shipping & receiving department.

13.     Shortly after Defendant terminated Plaintiff's employment, Defendant placed Kerry Todd, a white male, in Plaintiff's former position as "lead" over the shipping & receiving department.

## IV.     COUNT ONE – Title VII and/or 42 U.S.C. § 1981– Race - Termination.

14.     Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 13 above.

15.     Plaintiff is a black male.

16.     During his employment with Defendant, Plaintiff made three separate complaints regarding the fact that Defendant never gave him the promised raise at the conclusion of his 90-day probation.

17.     Plaintiff complained to Defendant's plant manager, Steve Jordan, and to Defendant's HR manager, Jim Counts.

18.     Defendant hired Kerry Todd, a white employee, to work in the shipping and receiving department.

19.     Plaintiff later learned that Defendant paid Kerry Todd $13 per hour.

20.     Defendant paid Plaintiff $11 per hour.

21.     Plaintiff supervised Kerry Todd pursuant to the shipping and receiving department's chain of command.

3

22.    Despite Plaintiff's seniority over Todd, Defendant paid Plaintiff $2 per hour less than Kerry Todd.

23.    Kerry Todd is a white male.

24.    On July 30, 2016, Plaintiff wrote a complaint of discrimination and attempted to give it to Defendant's plant manager, Steve Jordan.

25.    Jordan did not accept Plaintiff's letter, but instead directly asked Plaintiff what the letter was about.

26.    Plaintiff informed Jordan that the letter restated his previous complaints regarding the lack of a pay raise that was never given.

27.    Plaintiff then asked Mr. Jordan what he would think if he was working for someone, and making less money than a co-worker who was his subordinate, that was less qualified, and how would that make him feel.

28.    Mr. Jordan responded, "I would feel like I had been mistreated."

29.    On August 2, 2016, Plaintiff started his shift at 6:30 a.m. as scheduled.

30.    At 11:00 a.m., Defendant's HR manager, Jim Counts, called Plaintiff into the breakroom and stated that Defendant terminated his employment because Defendant "decided to go in a new direction."

31.    Counts already had Plaintiff's payroll check from the previous week and a payroll check for the three days Plaintiff had worked during the current work

4

week.

32.    Shortly thereafter, Defendant hired Kerry Todd, a white male, to be the lead over the shipping and receiving department on the back dock.

33.    In violation of Title VII, Defendant terminated Plaintiff's employment because of his race.

34.    As a result of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of benefits mental anguish.

35.    In violation of 42 U.S.C. § 1981, Defendant terminated Plaintiff's employment because of his race.

36.    As a result of Defendant's violation of 42 U.S.C. § 1981, Plaintiff has been damaged, suffering loss of benefits mental anguish.

## V.    COUNT TWO – Title VII and/or 42 U.S.C. § 1981– Retaliation – Termination

37.    Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 36 above.

38.    Plaintiff is a black male.

39.    During his employment with Defendant, Plaintiff made three separate complaints regarding the fact that Defendant never gave him the promised raise at the conclusion of his 90-day probation.

40.    Plaintiff complained to Defendant's plant manager, Steve Jordan, and to Defendant's HR manager, Jim Counts.

41.   Defendant hired Kerry Todd, a white employee, to work in the shipping and receiving department.

42.   Plaintiff later learned that Defendant paid Kerry Todd $13 per hour.

43.   Defendant paid Plaintiff $11 per hour.

44.   Plaintiff supervised Kerry Todd pursuant to the shipping and receiving department's chain of command.

45.   Despite Plaintiff's seniority over Todd, Defendant paid Plaintiff $2 per hour less than Kerry Todd.

46.   Kerry Todd is a white male.

47.   On July 30, 2016, Plaintiff wrote a complaint of discrimination and attempted to give it to Defendant's plant manager, Steve Jordan.

48.   Jordan did not accept Plaintiff's letter, but instead directly asked Plaintiff what the letter was about.

49.   Plaintiff informed Jordan that the letter restated his previous complaints regarding the lack of a pay raise that was never given.

50.   Plaintiff then asked Mr. Jordan what he would think if he was working for someone, and making less money than a co-worker who was his subordinate, that was less qualified, and how would that make him feel.

51.   Mr. Jordan responded, "I would feel like I had been mistreated."

52.   On August 2, 2016, Plaintiff started his shift at 6:30 a.m. as

scheduled.

53.     At 11:00 a.m., Defendant's HR manager, Jim Counts called Plaintiff into the breakroom and stated that Defendant terminated his employment because Defendant "decided to go in a new direction."

54.     Counts already had Plaintiff's payroll check from the previous week and a payroll check for the three days Plaintiff had worked during the current work week.

55.     Shortly thereafter, Defendant hired Kerry Todd, a white male, to be the lead over the shipping and receiving department on the back dock.

56.     In violation of Title VII, Defendant terminated Plaintiff's employment in retaliation for his complaints of racially discriminatory pay practices.

57.     As a result of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, mental anguish.

58.     In violation of 42 U.S.C. § 1981, Defendant terminated Plaintiff's employment in retaliation for his complaints of racially discriminatory pay practices.

59.     As a result of Defendant's violation of 42 U.S.C. § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, mental anguish.

## VI.    COUNT THREE – Title VII and/or 42 U.S.C. § 1981– Race Discrimination – Pay Practices

60.     Plaintiff hereby incorporates by reference each of the allegations

contained in paragraphs 1 through 59 above.

61.     Plaintiff is a black male.

62.     Defendant employed Plaintiff as the "lead" in its shipping and receiving department.

63.     Defendant employed Kerry Todd.

64.     Kerry Todd is a white male.

65.     Defendant paid Plaintiff an hourly wage of $11.00 per hour.

66.     Defendant paid Todd an hourly wage of $13.00 per hour.

67.     Defendant's required qualifications for the position held by Plaintiff and similarly situated white male co-workers were identical.

68.     Defendant paid a higher hourly wage to Todd, than the hourly wage paid to Plaintiff.

69.     Plaintiff served as a Shipping & Receiving "lead" for a longer period of time than Todd.

70.     Defendant does not employ a merit system to measure the quantity and quality of production performed by Plaintiff or Todd.

71.     Defendant does not measure the quantity and quality of production performed by Plaintiff or Todd in awarding pay decisions.

72.     The skills, effort, time commitment, experience, and education required to perform Plaintiff's job duties, as well as the results of the performance

of those duties, compared to the job duties of similarly situated white co-workers were virtually identical, yet white co-workers were paid in whole or part substantially more money than was Plaintiff for similar job duties with equal or less results in the performance of those job duties.

73.    As a result of Defendant paying Plaintiff less money than similarly situated white male co-workers, Defendant violated Title VII.

74.    As a result of Defendant's willful and intentional violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

75.    As a result of Defendant paying Plaintiff less money than similarly situated white male co-workers, Defendant violated 42 U.S.C. § 1981.

76.    As a result of Defendant's willful and intentional violation of 42 U.S.C. § 1981, Plaintiff has been damaged, suffering loss of pay and benefits.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

A.    Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant are violative of the rights of the Plaintiff as secured by Title VII and 42 U.S.C. § 1981.

B.     Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant's request from continuing to violate Title VII and 42 U.S.C. § 1981.

C.     Enter an Order requiring Defendant to make Plaintiff whole by awarding her front-pay, back-pay (plus interest) compensatory damages, punitive damages, special damages, and/or nominal damages, injunctive and declaratory relief, and benefits.

D.     Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

_____
ALLEN D. ARNOLD

_____
KIRA FONTENEAU

OF COUNSEL:

FONTENEAU & ARNOLD, LLC
2151 Highland Avenue South, Ste. 205
Birmingham, Alabama 35205
(205) 252-1550 – Office
(205) 502-4476 – Facsimile

## PLAINTIFF REQUESTS TRIAL BY STRUCK JURY

OF COUNSEL

DEFENDANT'S ADDRESS:
Physical Security, LLC
c/o Roy V. Swindal
600 Belview Street
Bessemer, AL 35022